John B. Hagenbuchle, Respondent, *v.* Louis Schultz, Appellant.

*Partnership accounting — referee's report — statement of accounts — extra allowance.*

The referee's report in an action brought to obtain a partnership accounting, should contain a plain, simple and intelligent statement of the accounts between the parties, and show how the balance was struck or arrived at.

Articles of copartnership provided that letters patent owned by the individual partners should remain their individual property, but that the copartnership should be entitled to the use of the improvements which were the subject of such letters patent during the existence of the copartnership, upon assuming and meeting all the expenses and payments which might be incurred in maintaining title to such patents.

*Held,* that one of the partners was not entitled to have allowed him moneys paid by him for obtaining patents, and which were not expenses incurred in maintaining letters patent.

In an action brought to obtain a dissolution of a firm and for an accounting it appeared that the articles of copartnership provided that the partners should be entitled to draw certain stated salaries, to be charged as expenses of the business before any division of profits, and that there should also be paid before any division of profits, to one of the partners (the defendant) as expenses of the partnership, three per centum of the gross receipts of the business. A substantial part of the copartnership business was transferred to a corporation, in the stock of which both partners were interested; they agreed that their stock should be voted as a unit, and the defendant agreed that if he should be elected president of such corporation at a certain salary the plaintiff should be released from all liability by reason of the provision of the copartnership articles giving the defendant three per cent on the gross sales of the firm.

*Held,* that this agreement was a recognition of the continued existence of the copartnership, and of the rights of the parties thereunder, including the right to draw the fixed salaries stated in the articles, until the dissolution of the copartnership.

For the purposes of granting an extra allowance in an action for a partnership accounting, the amount for which judgment is obtained is to be deemed the amount involved.

APPEAL by the defendant, Louis Schultz, from a judgment of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 30th day of March, 1892, upon the report of a referee, and from an order of the Supreme Court, also brought up for review, made at the New York Special Term at Chambers, and entered on the 21st day of March, 1892, granting the plaintiff an extra allowance.

*Esek Cowen,* for the appellant.

*N. T. M. Melliss,* for the respondent.

VAN BRUNT, P. J.:

The plaintiff and defendant in this action were copartners doing business under the firm name of " The Excelsior Quilting Co., L. Schultz & Co., proprietors; " and this action was brought for the dissolution of such copartnership, and to require the defendant to render an account of all money received by him in said business, and to pay to the plaintiff his share thereof, and also for the disposition of certain personal and real estate. The defendant answered, and upon the coming in of said answer it was stipulated between

the parties that the complaint should be amended, and it was deemed amended by striking therefrom all allegations in respect to the real estate therein described, and also as to certain personal property; and the action was left to proceed for a dissolution of the firm and an accounting. A reference being ordered of the issues remaining, a trial was had before the referee, who reported in favor of the plaintiff, and a motion being made for an extra allowance, an order for an extra allowance of $2,000 was made; and from the judgment entered upon said report and order this appeal is taken.

The investigation of the facts supposed to be contained in this record has been rendered exceedingly laborious because of the manner in which the record has been made up, the alleged judgment roll containing a large number of papers which have no proper place in a judgment roll, viz., the findings of fact which have been refused, the exceptions to the findings which do not appear to have been filed before judgment, and the affidavits and order in respect to the extra allowance; and our investigation has been by no means aided by the manner in which the counsel for the respondent has presented the facts of the case in his brief, it being claimed in the brief that certain facts are established by the evidence, without any reference whatever, except in one or two immaterial instances, to any testimony given in the case And, furthermore, upon an investigation of the findings of fact and conclusions of law contained in the referee's report it has been impossible to ascertain the basis upon which the referee arrived at the amounts for which he rendered judgment. Even the plaintiff's attorney seems to have given this up as a hopeless task as, from the statement he has presented, it is apparent he has not solved the riddle. The duty of the referee was to make a plain, simple, intelligent statement of the accounts between the parties and to show how the balance was struck or arrived at. This he has utterly failed to do, and from the figures contained in his report, it is impossible to arrive at the amount which he has reported. The discrepancy may not be large, but accuracy is certainly essential in cases of this description. If such an account had been presented in the referee's report, this court might have disposed, perhaps, of all the questions involved without ordering a new trial, but as the case now stands it is impossible for us to determine what is the judgment

which should have been entered. And it is to be observed that the defendant seems to have thrown every obstacle in the way which it was possible for his ingenuity to suggest, to hinder and hamper the investigation of the facts relating to his connection with the business of the copartnership, which by this action was sought to be dissolved, and his conduct and attitude are not such as commend his case particularly to the favorable consideration of the court.

We will, however, endeavor to point out some of the contentions advanced upon the part of the defendant which cannot be sustained, and others upon the part of the plaintiff which are evidently erroneous, and also to show that the various experts examined were evidently entirely ignorant of the business which they professed to perform.

In order that the questions to be discussed may be understood, it will be necessary to refer to the articles of copartnership entered into between the parties in February, 1886, and which seem by agreement to have been extended to the time of the commencement of this action. Such articles, after providing for the formation of the copartnership and that the copartners shall contribute to the copartnership certain stock and good will, provide that letters patent owned by the individual partners, not excepting a certain license owned by the defendant, should remain the individual property of the partners, but that the copartnership should be entitled to the use of the improvements which are the subject of such letters patent and license during the existence of the copartnership, upon assuming and meeting all the expenses and payments which might have been incurred and might be incurred *in maintaining title to such patents*, it being understood that for the use of the patent under the license the copartnership should pay all sums which might be due and become due, and which the defendant should be obligated to pay at the time of his acquiring such license, together with all expenses of litigation in which such letters patent might be involved.

Now it is claimed upon the part of the defendant that certain items should have been allowed him which were excluded by the referee in reference to these patents, under the clause in the articles above quoted. But we are of opinion that the referee was entirely right in excluding these items, for the reason that they were

evidently moneys which were paid by defendant for letters patent, and were not expenses which were incurred *in maintaining letters patent.* This is apparent from the defendant's own testimony in reference to the $6,250 paid in respect to the Koch patent. The defendant testifies as follows : " I had no agreement with Koch any more than that he was to assign the patent to me for the consideration of $6,250."

The same is true of the item of $808.20. It appears from the bill of items furnished that certainly all of that amount (except, perhaps, the sum of $72.25) was paid in the procuring of letters patent. And the same applies to the item of $700. These items were not expenses incurred in maintaining title to the letters patent. And that they were not intended to be so embraced is evident from the provision that upon the dissolution of the partnership, each party was to be placed in the same position, with respect to these letters patent and licenses, as though the partnership had never been formed, the provision being that on the dissolution of the partnership or the retirement of the plaintiff the latter loses all right to the letters patent owned by the defendant, and the defendant loses all right to the plaintiff's letters patent.

The next question is that presented in respect to the salary provided for the plaintiff and the defendant in the articles. It was provided therein that the defendant should be entitled to draw $2,500, and the plaintiff $1,200, in weekly sums, and that these payments should be charged as expenses of the business before any division of profits, and that there should also be paid before any division of profits, to the defendant as expenses of the partnership, three per centum of the gross receipts of the business. It appears from the evidence that in February, 1888, a substantial part of the business was transferred to a stock corporation called the Excelsior Quilting Company, and that both the plaintiff and the defendant were interested in the capital stock, and on the 23d of February, 1888, an agreement was entered into between the parties to this action that their stock was to be voted upon as a unit, and the defendant agreed that if he should be elected president and secretary of the company for two terms at a salary of $5,000, and five per cent of the net profits, so that he would have received such salary for two years, the plaintiff should be released from all liability by reason of the

provision of the copartnership articles, which gives to the defendant three per cent on the gross sales of the firm of L. Schultz & Co. This agreement clearly contemplated the continuance of the business of Schultz & Co., and that it should not be deemed dissolved, and in fact it never was dissolved as found by the referee. It also contemplated the fact that the parties were entitled to draw certain sums to be charged as expenses against that business, and they agreed, one with the other, that under certain circumstances the defendant should relinquish a certain portion of his rights under the copartnership agreement, a clear recognition of the existence of the copartnership and the rights of the parties thereunder.

Therefore, as to the amounts which the partners were entitled to draw, the provisions of the copartnership articles continued until the dissolution of the copartnership, and the defendant was entitled to the salary as claimed by him.

The question as to the salary of Wagner, who was employed by the copartnership as bookkeeper and assistant, is a question of more difficulty. It is exceedingly doubtful upon this record whether Wagner was entitled, after the formation of the quilting company and after he had virtually ceased to render any service to the copartnership, to draw his salary under this agreement.

There is also a manifest error in the manner in which the expert for the plaintiff makes up his accounts. In the statement prepared by him showing the partnership assets and liabilities of Schultz & Co., he remarks that the figures indicate that the plaintiff had drawn $1,745.55 less than the defendant, and that that amount was, therefore, due to the plaintiff at the date of the account, and he treats it apparently as a liability as against the defendant. This is clearly erroneous. All that there was due to him, so far as this item was concerned, from the defendant, was one-half of that amount, because as soon as he received one-half of the amount from the defendant, the drawings of both were equal.

The learned referee, in the imperfect statement of the account which he makes, commits several errors. In the first place, he does not commence such account with the commencement of the partnership. Then, in the giving of credits, he excludes all payments to the partners individually, which would seem to be a very necessary item in the making up of the accounts as between these

parties. Furthermore, he treats all drafts made by either of the partners upon the firm as overdrafts which in any way exceeded the money contributed by such copartner, utterly ignoring the rights of the partners to profits, a manifestly erroneous method of stating the account.

There is no explanation given of the various items which enter into the account stated by him, and it is impossible to understand what these items represent, particularly the item of machinery, amounting to $17,070.65. If that is intended to represent the cash received for machinery sold, the money must have passed into the bank account, and thus the defendant would be charged twice with the same. If it represents machinery on hand, then the defendant is also charged twice, certainly in respect to some of the same, because he is expressly charged, in addition to that item, with sums amounting to over $9,000 for machinery. It further seems to have been supposed that the defendant had no right to sell his interest in any of the copartnership property.

This, clearly, was erroneous. He had a perfect right to sell his interest in any of the property owned by the copartnership, the purchaser taking the same, subject to the equities of the other partner and of the creditors of the concern.

Without further consideration of the facts appearing upon this record, it is evident that the whole construction of the account proceeded upon an erroneous basis, and results were arrived at which were not sustained by the evidence.

It is proper here to say a word in regard to the extraordinary allowance which seems to have been granted to the plaintiff upon the coming in of the referee's report. The referee reported $8,819.11 due the plaintiff, with interest from January 31, 1891, and an allowance of $2,000 was granted. This seems to us to have been an exorbitant allowance, even had the amount involved been the whole assets of the firm, without deducting the payments made on account of those assets, which seems to have been the theory upon which the allowance was granted.

The amount involved in the action was the amount for which judgment was obtained, and nothing else. We are of opinion, therefore, that this order should be reversed, with ten dollars costs and disbursements; and that the judgment appealed from should

be reversed and a new trial ordered before a new referee to be appointed by this court, with costs to the appellant to abide the event.

O'BRIEN and FOLLETT, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and judgment reversed and new trial ordered before a new referee to be appointed by this court, with costs to the appellant to abide the event.